**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

W.R. Hansen dba Hansen Drilling

   **Plaintiff,**

   v.

LKA Gold Incorporated, a Delaware corporation

   **Defendants.**

---

**COMPLAINT AND JURY DEMAND**

---

The Plaintiff, by and through its attorneys, Richmond Law Firm, LLC, for its claim against the

Defendants states as follows.

**PRELIMINARY STATEMENT**

1. Plaintiff W.R. Hansen dba Hansen Drilling ("Hansen") is an individual that agreed to provide

labor and other services to Defendant LKA Gold Incorporated ("LKA"), a Delaware corporation.

This labor was provided on mining claims in Hinsdale County, Colorado owned and/or operated

by LKA.

2. Hansen undertook all transportation and preparation activities necessary and contemplated by

the contract.  Hansen began his contracted work but LKA's project superintendant stymied any

and all efforts.  LKA willfully and wantonly attempted to cancel Hansen's contract and refused to pay the contracted price for the work performed by Hansen.  LKA has refused, without justification, to pay for the work performed or to honor the bargain contemplated by the contract.

3. The purpose of this suit is to obtain payment from LKA for the amount owed under the parties' written contract.

## PARTIES

4. Plaintiff Hansen is an individual with his principal residence in Montana.  Hansen's address is P.O. Box 392 Philipsburg, MT 59858

5. Defendant LKA Gold Incorporated is a Delaware corporation with property and operations in Hinsdale County, Colorado and its principal office located at 3724 47th Street Ct. N.W., Gig Harbor, WA 98335.

## JURISDICTION AND VENUE

### A.      This Court Has Subject Matter Jurisdiction

6. This Court has subject matter jurisdiction based on diversity of citizenship.  "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States….” 28 U.S.C.A. § 1332(a) (West).

7. Defendant is a corporation.  “[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business….”  28 U.S.C.A. § 1332(c)(1) (West).

8. Hansen is a citizen of Montana.  LKA is incorporated in Delaware and its principal place of business is in Washington.

9. Hansen's losses from LKA's conduct, the damages claimed by Hansen in this action, exceed $75,000, exclusive of interest and costs.

**B.**     **This Court Has Personal Jurisdiction Over Defendants**

10. LKA owns property in Colorado, has employees in Colorado, conducts business deals in Colorado, and mines its real property in Colorado.

11. LKA's ownership of property in Colorado and its continuous and systematic transaction of business within Colorado subjects them to the personal jurisdiction in Colorado courts and, by extension, this Court.  See CRS 13-1-124, *First Entm't, Inc. v. Firth*, 885 F. Supp. 216, 219 (D.

Colo. 1995) ("The law of the forum state, in this case, Colorado, determines whether a federal court has personal jurisdiction over a non-resident defendant in a diversity action.").

12. This Court has general jurisdiction based on LKA's "continuous and systematic activities that are of a general business nature in the forum state." *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 67 (Colo. 2007).

13. This Court also has specific jurisdiction based on LKA's mining activity in Colorado.  By mining, LKA has "'purposefully directed' [its] activities at residents of the forum...and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and *Helicopteros Nacionales De Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872).

## C.    Venue is Proper in this Court

14. A civil case may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C.A. § 1391(b)(3) (West).

15. This Court has personal jurisdiction over LKA as discussed above.  Thus this Court is the proper venue under 28 U.S.C.A. § 1391(b)(3) (West).

## STATEMENT OF FACTS

16. Defendant LKA owns a property known as the Golden Wonder Mine in Hinsdale County, Colorado.

17. In October of 2014, LKA entered into a contract with Hansen to provide "general drilling services" to LKA on the Golden Wonder Mine.  See Exhibit 1, attached.

18. The contract contained specific provisions including but not limited to:

- Mobilization charge of $10,000;

- Per diem rates of $100 per man per day;

- Hourly rate of $210 per hour;

- Standby rate of $70 per hour;

- Charges on drill bits and core boxes at cost plus 10%;

- Minimum drilling footage of 2700 feet at $27 per foot;

- An advance of $10,000.

19. The contract also contained a provision stating that if legal action were necessary to enforce the contract, the prevailing party would be entitled to recover all court costs and legal fees.

20. Kye Abraham, acting in his capacity as President of LKA, signed the contract on October 7, 2014.

21. Shortly after signing, LKA provided Hansen with the $10,000 advance as directed by the contract.

22. On November 5, 2014 Hansen, his crew, and his equipment arrived at the job site.

23. Problems began immediately as LKA failed to provide any room at the project site to unload materials.  Hansen was forced to leave three dry vans in Lake City, Colorado, roughly 5 miles below the mine site.

24. LKA was contractually responsible for providing adequate ingress and egress to the property.

25. LKA was also contractually obligated to mine out a drilling station, measuring 16 feet long by 16 feet wide, by 16 feet deep.

26. This excavated drilling station was to be created to allow Hansen to build a 16 foot by 16 foot timbered deck within the drilling station.

27. This drill station had not been excavated when Hansen arrived.

28. Hansen and his crew were forced to go on standby for 25 hours between November 8 and November 10 while LKA excavated the station.

29. On November 10, Hansen and his crew were delayed from accessing the mine because LKA had scheduled other contractors to access the site.  These other contractors created a traffic jam that made accessing the site difficult.

30. Finally, on November 11 Hansen was able to begin work.  Hansen began to build a work deck.  A work deck is a necessary component for the drilling services Hansen was contracted to provide and was contemplated in the contract.

31. The construction of the work deck was delayed because, though LKA had finally finished the drilling station, it was smaller than the 16 feet x 16 feet x 16 feet  required by the contract.  The station actually ended up being a circle measuring 14 feet in diameter.

32. LKA's incorrect platform forced Hansen to cut down the work deck.  That required extra time.

33. On November 12, Hansen began setting up his drill.

34. As Hansen was setting up the drill, LKA attempted to cancel the contract.

35. Hansen reminded LKA that they had a contract.  LKA insisted on breaking the contract without cause.

36. Hansen finished removing all equipment from the site on November 18, 2014.

37. On December 24, 2014 Hansen sent LKA an invoice for $37,538.10 for the work performed. This invoice included

- $10,000 for mobilization, per the contract;

- $2,000 per diem during mobilization, per the contract;

- $16,240 in hourly rates, per the contract;

- $4,000 per diem for November 1 to November 22, per the contract;

- $211.32 for freight on core boxes, per the contract;

- $86.78 for freight on drill bits, per the contract;

- An offer to waive the contractually mandated minimum footage of 2700 feet at $27 per foot, equaling $72,900, if LKA paid $15,000 in demobilization and special insurance charges;

- And credit for the $10,000 advance already paid.

38. Hansen chose not to include an additional $1750 in standby time.  He did so on the understanding that his submitted bill would be paid.

39. This bill, with the exception of the $15,000 for demobilization, reflected expenses already incurred and paid by Hansen, and contemplated by the contract, in performing work for LKA.

40. LKA refused to pay this invoice.

41. LKA's breach denied Hansen the capital that was necessary to keep his business running.

42. As a result of LKA's breach, Hansen has been denied loans, been forced to close his business, missed additional business opportunities, and been forced to sell assets that he did not plan to part with.

43. These hardships have caused Hansen mental anguish.

44. To this day, LKA has refused any further payment to Hansen.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

45. Plaintiff incorporates by reference the allegations of paragraphs 1-44 of the Complaint.

46. Hansen entered into an written contract with LKA to provide drilling services at the Golden Wonder Mine in return for payment.

47. Until LKA attempted canceled the contract without cause, Hansen fulfilled his contractual obligations to the extent it was possible, providing all possible services contemplated by the contract.

48. LKA did not perform their contractual obligations which were necessary precursors to Hansen's obligations.

49. LKA failed to perform their obligations under the contract.  The failure to perform is a material breach of contract.

50. LKA did not pay for the services performed by Hansen.  The failure to pay is a material breach of contract.

51. LKA's breach of contract caused Hansen damages.

52. LKA is liable to Hansen for such damages.

53. These damages total $24,288.10 in unpaid services which were contracted plus consequential damages, including but not limited to missed business opportunities, caused by the breach in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**<u>Breach of Contract - Lost Profits</u>**

54. Plaintiff incorporates by reference the allegations of paragraphs 1-53 of the Complaint.

55. Hansen entered into a written contract with LKA to provide drilling services at the Golden Wonder Mine in return for payment.  LKA had a duty to pay Hansen for all the services contemplated by the contract.

56. The contract contemplated that Hansen would earn profits by, among other services, drilling 2700 feet at a set rate per foot, earning per diems, earning hourly rates, earning standby charges, and earning freighting charges.

57. When LKA attempted to cancel the contract, Hansen lost the opportunity to earn these profits contemplated by the contract.

58. LKA's breached caused Hansen to lose the opportunity to earn the profits he would have under the contract.

59. The net profits Hansen would have earned is a minimum of $66,000 plus consequential damages, including but not limited to missed business opportunities, caused by the breach in amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

### <u>Mental Anguish</u>

60. Plaintiff incorporates by reference the allegations of paragraphs 1-59 of the Complaint.

61. LKA had a duty to pay Hansen for work performed and still to-be-performed under the contract.

62. LKA breached its contract with Hansen in a manner that was not passive but rather was willful and wanton and without any legal justification or excuse.

63. LKA's willful and wanton breach of contract caused Hansen severe mental anguish.

64. The amount of damage caused by this mental anguish will be proved at trial.

### FOURTH CLAIM FOR RELIEF

### <u>Unjust Enrichment</u>

65. Plaintiff incorporates by reference the allegations of paragraphs 1-64 of the Complaint.

66. The work done by Hansen was done at the direct request of LKA.

67. The work was performed in circumstances where it was reasonable for Hansen to expect to be paid for its work. Hansen reasonably relied on the representations of LKA that it would pay for the work.

68. Hansen's labor and services conferred a benefit on LKA.

69. It would be unjust for LKA to accept and benefit from those services without paying for them.

70. Hansen is entitled to be compensated for the reasonable value of its services.

71. The reasonable value of these services will be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Special Damages

72. Plaintiff incorporates by reference the allegations of paragraphs 1-71 of the Complaint.

73. LKA's actions and consistent refusal to pay what is owed to Hansen has required Hansen to incur attorney's fees.

74. These attorneys fees were foreseeable damages contemplated by the contract between LKA and Hansen as demonstrated by the attorney fee provision in the contract.

75. Hansen is entitled to compensation for these special damages.  The amount of these special damages will be proven at trial.

## JURY DEMAND

57.  Hansen hereby submits a demand for a jury of six jurors.

## REQUEST FOR RELIEF

58.  Plaintiff Hansen requests the following relief:

A.  Judgment in their favor and against Defendants on all the claims set forth above;

B.  Damages against Defendant and in favor of Plaintiff in an amount to be determined at trial, pre- and post- judgment interest on such award of damages, together with expert witness fees, and reasonable costs and attorneys' fees;

C.  Such other relief as the Court deems just and equitable under the circumstances.

Respectfully submitted on this the 17th day of May, 2016


*/s/ Andy R. Richmond*
_____
Andy R. Richmond, No. 45927
Richmond Law Firm, LLC
P.O. Box 2903
Crested Butte, Colorado 81230
Phone Number: 970-315-2053
E-mail: andy@gunnisonlawyer.com
Attorney for Plaintiff Hansen